**UNITED STATES of America, Plaintiff,**

v.

**CONSOLIDATION COAL COMPANY, Francis Leo Marks, Raymond Zitko and Robert Lasick, Defendants.**

No. CR–2–75–97.

United States District Court, S. D. Ohio, E. D.

March 20, 1979.

Richard I. Chaifetz, Lauren S. Kahn, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Anthony J. Polito, Roger Curran, Pittsburgh, Pa., William J. Melvin, Richard C. Addison, Columbus, Ohio, Charles H. Bean, St. Clairsville, Ohio, William J. Abraham, Jerry Weiner, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

The defendants have filed a number of motions and memoranda of counsel. At trial counsel argued each of the motions. Defendants Consolidation Coal Company (Consol), Lasick, and Zitko have moved that Counts 16 through 157 be dismissed since they do not allege criminal acts.

The basis of the defendants' motion is found in the Court's memorandum and order filed in this case May 6, 1976. *United States v. Consolidated Coal Co.*, 424 F.Supp. 577 (D.C.Ohio 1976). In that action the Court rejected Consol's argument that the even-numbered Counts 16–170 are defective since the validity and accuracy of dust samples can only be determined by reference to the standards for determining sample accuracy set forth in regulations at 30 C.F.R. §§ 70.220(a), 70.242(a) and 70.260, which regulations are invalid by reason of improper rulemaking.

The defendant Consol then contended and still contends that rules made by the Secretaries of Health, Education and Welfare and of the Interior which establish "mandatory health standards" for underground coal mines must follow the rulemaking procedures set forth in 30 U.S.C. § 811(d). The government then argued and still asserts that 30 U.S.C. § 811(d) is inapplicable and that the regulations were adopted pursuant to 30 U.S.C. § 842(a) which specifically authorizes the two Secretaries to adopt the regulations.

In the prior memorandum and order the Court determined that:

While admittedly this is a very close question, this Court concludes that the statute involved in the challenged counts specifically authorizes the Secretaries of the Interior and of Health, Education and Welfare to prescribe the procedures by which samples are to be taken. See 30 U.S.C. § 842(a). Further, 30 U.S.C. § 957 provides that the Secretaries of these departments are "authorized to issue such regulations as each deems appropriate to carry out any provision of this chapter." The specific regulations in question do no more than set forth *procedures* which prescribe the "methods, . . . locations, . . . intervals, . . . and manner" by which samples pursuant to section 842 are to be taken. The setting of such procedures is the very thing authorized by section 842.

Additionally, although the point has not been briefed, the Court has some question as to whether the regulations in question are actually amendments or revisions of statutory standards within the meaning of section 811. No sampling procedures were set forth in the Act itself since Congress designated this be done by the Secretaries of the Interior and of Health, Education and Welfare by section 842; thus in actuality there is no statutory standard which can be amended. Further, as mentioned above, the regulations do not concern substantive standards but rather procedural matters pertaining to sampling.

For these reasons the Court concludes that this branch of defendants' motion to dismiss should be denied.

Rather simply stated, defendants now urge that if the regulations involved in Counts 16–157 are only procedural they cannot be the basis of a criminal prosecution.

■ This motion requires that the Court re-examine its earlier ruling. After doing so, the Court believes it should stand. If the regulations are so significant that a violation amounts to a crime, then their promulgation would warrant the Section 811(d) formalities. First, common sense dictates that regulations, which if violated, amount to crimes, should be promulgated only after the most serious consideration and an opportunity for those affected for consultation with the rulemakers. It is hard to imagine any rules which are more demanding pre-promulgation formalities than those which if violated subject persons to criminal sanctions. Moreover, if such a procedure is followed it will have the effect of clearly apprising those concerned of its criminal provisions.

■ Finally, this reading is consonant with the legislative intent of the drafters. Upon an examination of the legislative history of the Act, the Court of Appeals for the District of Columbia Circuit observed that the mandatory health standard concept evolved to deal with a dilemma perceived by those affected by the legislation: concern for agency amendment capability and concern for a capricious and unpredictable administration of the statute. *Ziegler Coal Co. v. Kleppe,* 175 U.S.App.D.C. 371, 375, 536 F.2d 398, 402 (D.C.Cir.1976). The resolution was the adoption of the "mandatory health standard" concept, which permits the Secretaries to adopt health standards but only after "elaborate consultative procedures." *Id.* 175 U.S.App.D.C. at 376, 536 ·F.2d at 403. As that Court stated:

> The most important aspect is the requirement of consultation with knowledgeable representatives of federal and state government, industry and labor. This goes far beyond the usual requirements of public notice and opportunity for comment set forth in the Administrative Procedure Act, and represents the Congressional answer to the fears expressed by industry and labor of the prospect of unchecked federal administrative discretion in the field.

Given the concern among the drafters that mandatory health standards be subject to the stringent promulgation requirements set forth in § 811(d) it would be unwise to construe the statute liberally to permit criminal penalties to be imposed for the violation of regulations not meeting those requirements.

The government, in argument, again called attention to Section 842(a) in reliance on its specific grant of rulemaking power, and suggests that identifying the contested regulations as "procedural" does not foreclose their being mandatory health standards as those words are used in section 819(b). It is urged that reading the regulations and the applicable statutes together, it becomes clear that one integrated process is formed, all necessary to carry out the statutory purposes. Therefore, they say, violation of the regulations, which are essential to the safety of the mines, are criminal acts.

■ The bothersome aspect of the government's position is that it sounds a retreat from an important and traditional philosophical principle: that criminal statutes must be strictly construed and that if a crime is to be established the statute or regulation must reasonably apprise reasonable persons that a failure to obey will amount to a basis for a conviction. We must be mindful that in this case we are not dealing with regulations which carry merely a civil penalty, but rather a criminal sanction for their violation.

■ At bottom the Court believes that a person should not have to speculate as to whether the rules promulgated by the Secretaries are procedural devices which must be followed to avoid civil penalties or Section 819(b) mandatory health standards which if violated amount to crimes.

■ The Court turns now to 30 U.S.C. § 814(i), which is referred to in Counts 16–157. This subsection requires an operator to take samples of the affected area during each production shift after receiving a notice of violation concerning the concentration of respirable dust required to be maintained under the Act. 30 U.S.C.

§ 802(*l*) defines a mandatory health or safety standard to mean "the interim mandatory health or safety standards established by subchapters II and III of this chapter, and the standards promulgated pursuant to subchapter I of this chapter." Defendants argue that this is only a sampling procedure—not a part of Title II of the Act which provides for mandatory health and safety standards—and therefore not a mandatory health or safety standard. Rather, defendants claim since it is found in Title I of the Act it is not a mandatory health and safety standard, and a violation of its provisions does not amount to a crime. The government claims that Section 814(i) is incorporated by reference into Section 842(a) which provides:

> Such samples shall be transmitted to the Secretary in a manner established by him, and analyzed and recorded by him in a manner that will assure application of the provisions of section 814(i) of this Act when the applicable limit on the concentration of respirable dust required to be maintained under this section is exceeded.

The language used in § 842(a), while speaking to the purpose to "assure application of the provisions of section 814(i) [30 U.S.C. § 814(a)]" falls short of incorporating that section into the Title II provisions, and thereby, making its violation a crime. Such a roundabout method of establishing a crime is inapposite to the degree of certainty of understanding that our law has required of criminal statutes.

Each of the Counts 16–157 contain allegations that Section 842(a) has been violated. Defendants claim this section does not set forth a mandatory health standard. The Court agrees. On the one hand, Section 842(a) is a part of Subchapter II (Title II of the Coal Mine Health and Safety Act) which is entitled "Interim Mandatory Health Standards."

Section 842(a) reads in part as follows:

> (a) Each operator of a coal mine shall take accurate samples of the amount of respirable dust in the mine atmosphere to which each miner in the active workings of such mine is exposed.

As I indicated in the May memorandum, it is clear that a standard is called for but not found in Section 842(a). The subsection gives no guidance as to the meaning of an accurate sample as to how or when it is to be collected. Looking to the trial setting, the Court cannot perceive what standards a jury would be instructed to apply to facts they find in order to make a decision under § 842(a) standing alone. Reading § 842(a) together with § 842(b), it appears that the former merely describes the method for determining whether the standards in the latter are satisfied: that is, by samples taken by the operator.

The motion to dismiss Counts 16–157 is well taken and it is GRANTED. Accordingly, Counts 16 through 157 are ORDERED dismissed.

The Court notes that although reference was made in some of the pleadings on this issue to Counts 1 and 2 of the indictment, they are not defeated by the Court's ruling on the counts alleging violations of mandatory health standards. Count 2 will be restricted to its charge that defendants conspired to commit the offense of document falsification prohibited by 30 U.S.C. § 819(d).

The Court will now address defendants' motions in limine.

## I

First an order is requested to prevent the government from arguments directed to the entire coal mining industry. Those charged with the prosecution of criminal cases must be allowed the freedom to advance hard arguments, but they must be fair. Arguments directed toward persons or entities not before this Court are improper. In this respect defendants' motion is well taken and it is GRANTED. Accordingly, the government must confine its argument to the parties to this action.

## II

Defendants further ask the Court for an order which would prevent the government from injecting evidence or ar-

gument concerning methane gas and/or "black lung disease" into the trial of this case. The Court believes that the government may make mention that the statutory scheme here involved is directed to accomplish occupational safety in the mines. However, until it is demonstrated that the disease black lung has some evidentiary relevancy, its injection into the trial can only be to arouse the jury's passion. It is a matter that has little value to the issue and a strong potential for prejudice to the defendants. It is ORDERED that the disease "black lung" and/or methane gas not be presented in counsel's comments or evidence. However, if the government has a theory of the relevance of such evidence or comment that has not been presented, the Court will reconsider its ruling.

## III

■ Defendants next request that the prosecution be ordered not to present expert testimony or argument concerning the intent of any statutes or regulations involved in this case.

The Court understands well-established general principles that witnesses at trial should not be permitted to testify concerning the meaning or intent of the law. The law, of course, is a matter within the province of the Court. The Court also recognizes that in some cases statutes and regulations are technical, complex and not within the understanding of lay persons. In the instant case expert testimony may be adduced concerning important ultimate issues. Testimony can be adduced as to how dust sample tests are conducted under relevant law. However, we enter a gray area when such testimony may include a witness's understanding as to what the law really means.

Before any witness testifies as to any interpretation of the meaning of the law or legislative intent, counsel are ORDERED to advise the Court of their desire to produce such testimony. Thereafter, a special voir dire examination can be held outside the presence of the jury to determine its admissibility.

## IV

■ Defendants' request for an order that the government not argue personal beliefs is GRANTED.

## V

■ Defendants also move for an order to prevent the government from introducing evidence that certain documents were destroyed. It is claimed that such evidence is not relevant under Rule 404(b) of the Federal Rules of Evidence, highly prejudicial and inadmissible under Rule 403, and according to one counsel inadmissible hearsay.

The Court is unable to rule upon this branch of defendants' motion until more information is disclosed. Whether the evidence is admissible will depend upon the posture of the evidence concerning the relationship of the parties and the witnesses.

If and when the government decides to introduce such evidence, counsel for the government are ORDERED to advise the Court so that proper inquiry can be made in order to determine its admissibility. Counsel should also caution their witnesses not to testify concerning the alleged destroyed documents until the Court has had the opportunity to rule on the admissibility of such evidence.

## VI

■ Defendants Zitko and Lasick each request that they be severed for trial from the other defendants and each other. They each claim undue prejudice will result from this multiple defendant trial. They argue that certain inconsistencies in trial strategy, as well as basic general positions, exist to such an extent that they cannot be fairly tried as presently contemplated by the Court.

At this stage of the proceeding the Court does not agree with defendant's position in this regard. The motions to sever are DENIED without prejudice to re-assert this motion if further reasons for severance are disclosed by the evidence.

It is so ORDERED.